**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

IN RE: SHELL EGGS ANTITRUST
LITIGATION

No. 3:26-md-03175-JDP

---

**DEFENDANT URNER BARRY PUBLICATIONS, INC.'S MOTION TO SEAL
AND TO LIMIT ACCESS TO HIGHLY CONFIDENTIAL INFORMATION**

Defendant Urner Barry Publications, Inc. ("Urner Barry") respectfully moves this Court for an order granting two forms of relief concerning the Consolidated Class Action Complaints (CCACs) (Dkt. Nos. 176–81): (i) sealing portions of the CCACs from public disclosure, pending entry of a protective order in this action, and (ii) sealing certain highly confidential portions of the CCACs from co-Defendants, with access limited to outside counsel and in-house counsel,[1] pending Urner Barry's completion of a narrowly tailored redaction review.  Urner Barry will share more narrowly redacted versions of the CCACs with Urner Barry's co-Defendants by August 14, 2026, on the condition that co-Defendants keep such information confidential.  Once a protective order is entered, within two weeks, Urner Barry will reevaluate the redactions in light of the protective order and tailor any redactions accordingly.

Urner Barry has conferred with Plaintiffs, who do not oppose Urner Barry's motion to seal, as well as co-Defendants, who do not oppose Urner Barry's or Plaintiffs' motions to seal; however, as the co-Defendants have not been provided with the proposed

---

[1] If a particular co-Defendant does not have in-house counsel, Urner Barry agrees to meet and confer with that co-Defendant over the next two weeks to ensure the co-Defendant has access to necessary information.

redactions to the CCACs at the time of filing this motion, co-Defendants reserve the right to challenge the basis for any such redactions at a later date.

Urner Barry files this motion as a supplement to Plaintiffs' motion to seal (Dkt. No. 182) to describe the confidential business information at issue and the serious commercial harm Urner Barry would face if that information were disclosed publicly or made available to co-Defendants before appropriate protections are in place.  Because the parties have not yet entered into a protective order, and because Administrative Order 337 of the Western District of Wisconsin permits sealing only pursuant to a protective order previously entered by the Court or a contemporaneous motion to seal, Urner Barry files this contemporaneous motion.

Separately, Urner Barry is already in the process of implementing a narrower set of redactions to the CCACs to share with co-Defendants by August 14, 2026.  Urner Barry needs this additional time to complete its review of the voluminous confidential source materials cited in the CCACs due to the need for line-by-line review and the need to ensure that any party-level redactions are no broader than necessary to protect Urner Barry's highly confidential commercial information.  Urner Barry did not receive drafts of the CCACs until July 28, 2026, and could not complete a comprehensive review in only two days.

Urner Barry and Plaintiffs entered into a Memorandum of Understanding ("MOU") governing Urner Barry's document production in this litigation.  Under the MOU, Urner Barry and Plaintiffs agreed that Urner Barry's production would be confidential among the parties to the MOU.  Urner Barry respectfully refers the Court to Plaintiffs' Motion to Seal for further discussion (Dkt. No. 182).

While the public "has an interest in what goes on at all stages of a judicial proceeding," the public's interest "does not always trump the property and privacy interests of the litigants." *Citizens First Nat'l Bank of Princeton* v. *Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). The public's interest in open judicial records may be overridden when the parties' interests in property and privacy "predominate" in the case. *Id.* To seal all or a portion of the case, a court must conclude there is "good cause" to do so. *Id.* at 944–45. "[T]he Seventh Circuit has made clear that sealing certain information may be warranted 'in order to protect trade secrets or other compelling interests in secrecy.'" *Wis. Alumni Rsrch. Found.* v. *Apple, Inc.*, 2015 WL 6453837, at *1 (W.D. Wis. Oct. 26, 2015) (*quoting Jessup* v. *Luther*, 277 F.3d 926, 929 (7th Cir. 2002)). For information to qualify as a trade secret, it must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and be "the subject of efforts to maintain its secrecy that are reasonable under the circumstances." Wis. Stat. § 134.90(1)(c).

Disclosure of Urner Barry's nonpublic business information without appropriate protections, whether to the public or to business personnel at co-Defendants—a group made up largely of Urner Barry's customers and other market participants—risks serious commercial harm. Co-Defendants could use this information in commercial dealings with Urner Barry or to replicate, challenge, or undermine aspects of Urner Barry's benchmark-setting process. The balance of interests therefore supports sealing the requested portions and, on an interim basis, limiting co-Defendants' access to outside counsel and in-house counsel. *See, e.g., Planned Parenthood of Wis., Inc.* v. *Van Hollen*, 94 F. Supp. 3d 949,

960 (W.D. Wis. 2015) (granting motion to seal exhibits as materials containing trade secrets, as they "outlin[e] its protocols for operation"); *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 2013 WL 6490343, at \*5 (N.D. Ill. Dec. 10, 2013) (recognizing that non-competitor recipients of trade secrets "may nevertheless present at least a theoretical risk analogous to the risks arising from disclosure in litigation between market rivals").

Specifically, the CCACs draw extensively on Urner Barry's confidential documents, data, and internal communications concerning the calculation of its price benchmark. The CCACs describe: Urner Barry's internal quotation-setting methodology; the specific mechanics by which Urner Barry aggregates trade data into its daily benchmark price; transaction-specific data underlying particular benchmark movements, including the identity of the data contributor submitting each transaction, bid or trade, the precise price and date of that transaction, bid or trade, and related internal communications; and market commentary that individual market participants communicated to Urner Barry's reporters.

Exposure of this information, including to co-Defendants' business personnel, would cause competitive harm by allowing customers, competitors, and other market participants to attempt to reverse-engineer Urner Barry's benchmark-setting process. Urner Barry derives economic value from the fact that this information is not generally known or readily ascertainable and from others' inability to duplicate its benchmark. Urner Barry also takes reasonable steps to maintain the secrecy of this information, including by not publicly disclosing its methodology at a granular level and by treating the information as proprietary and confidential.

Urner Barry's request for a brief two-week period to provide co-Defendants with narrowly tailored redactions is also reasonable. *FTC* v. *Surescripts, LLC*, 2019 WL

11317978 (D.D.C. Apr. 17, 2019) (granting motion to seal complaint for 10 days to allow Surescripts and third parties an opportunity to seek an appropriate protective order).  Co-Defendants will suffer no prejudice from this interim relief because their counsel will have access to the unredacted CCACs while Urner Barry completes its timely review.

The interim protections Urner Barry seeks here are no broader than those granted by the protective orders invariably entered in complex antitrust cases such as this one.  If the Court had already entered a protective order proposed by the parties, Urner Barry would be able to protect its competitive interests by designating portions of the CCACs highly confidential ("attorneys' eyes only"), subject to the challenge procedure agreed to by the parties in the order.  Urner Barry must seek interim relief from the Court only because Plaintiffs, in compliance with the Court's schedule, have filed their CCACs before a protective order could be negotiated and entered by the Court.  This feature of the case schedule and sequence should not deprive Urner Barry of the opportunity to protect competitive information that it provided to Plaintiffs subject to the strict confidentiality limitations.

For these reasons, Urner Barry respectfully requests that the Court grant this motion and permit the identified portions of the CCACs to remain under seal from public disclosure pending entry of a protective order.  Urner Barry further requests that, until it completes its review and proposes narrowly tailored redactions for party-level access, the Court limit access to the unredacted CCACs to outside counsel and in-house counsel.

Dated: July 31, 2026

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**

By:  */s/ Staci Yablon*
Staci Yablon
Katherine Forrest
Eyitayo St. Matthew-Daniel
Natalie Marie Pita
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: 212-373-3000
Fax: 212-757-3990
syablon@paulweiss.com
kforrest@paulweiss.com
tstmatthewdaniel@paulweiss.com
npita@paulweiss.com

**QUARLES & BRADY LLP**

Matthew J. Splitek
33 East Main Street, Ste. 900
Madison, WI 53703
Tel.: 608-251-5000
matthew.splitek@quarles.com

*Counsel for Urner Barry Publications, Inc.*